ALBANY,
February, 1805.

Paschal N. Smith, President of the Columbian Insurance Company, *against* William Bell, Joseph Bell, and Samuel Watson.

Smith
v.
Bell & others.

IN error, upon a bill of exceptions, tendered and sealed on the trial of this cause, at the circuit court, in the city of *New-York*, in which the now defendants were plaintiffs.

The action was on a policy of insurance on the ship *Mary-Ann*, valued* at 14,000 dollars, " at and from *Charleston* to *Glasgow*, and at and from thence to *Philadelphia*, or one other port in the *United States*." The plaintiffs went for a technical total loss, in consequence of the vessel's having been stranded on the coast of *Scotland*, and injured to an extent, which required 7,221 dollars to repair. They gave in evidence a subsequent sale of the vessel at *Greenock*, on account of those who might be concerned, the purchase by the firm of *Archibald Campbell & Co.* and her reparation at an expense exceeding half her value. The defendants relied on their having paid into court the sum of 5,100 dollars, contending, that as the amount of expenditure for repairs, was only 7,221 dollars, and they were entitled to a deduction of one-third, new for old, they were chargeable with only 4,884 dollars 32 cents, which, not amounting to half the value of the vessel, could not constitute a technical total loss. That, therefore, as they had paid into court, 5,100 dollars, the verdict ought to be in their favour, it being the law, that the allow-

To constitute a technical total loss of a ship, by damage, from the perils insured against, she must be injured to the amount of half her value, or more, after deducting the one-third, new for old, allowed the underwriter; that is, she must be injured to the extent of three-fourths of her value, or more.

* There is some uncertainty as to this in the printed case. The first page states it to be an open policy ; the second, that "in and by" the policy, she was " valued at," &c.

U

ance of one-third, new for old,. should be made, before the right of recovering as for a total technical loss, on account of damage sustained under the policy, could arise.

The judge, however, at *nisi prius*, thinking otherwise, the verdict was, under his direction, given for the plaintiffs, and the case now came up on this single question ; whether the underwriter on a ship is liable for a total loss, when the injury she receives from the perils insured against, deteriorate her more than half, without deducting the one-third, new for old ; or, whether the one-third, new for old, must not first be allowed the insurer, and the injury, after that deduction, amount to the half her worth, or more ?*

*I was not present at the argument.

The determination at *nisi prius*, was founded on a decision of the supreme court, in the case of *Dupuy* v. *United Insurance Company*, in which, from the notes of KENT, Ch. J. it appears the court ruled to this effect.

Where the repairs are equal to half the value, and more, the insured have a right to abandon. The rule is general, and has no reference to the distinction of new for old. It is the actual expenditure, or damage which is taken into view, and on the abandonment, the insurer has all the benefit of the repairs. The rule of deducting one-third, new for old, can be applied only in a case of partial loss. Here there was a clear case for abandonment, and the plaintiff must have judgment.

*Per curiam*, delivered by *Lansing*, chancellor.— On this case, only two questions are presented for the consideration of the court. 1st. Whether, on a policy of insurance, on the estimate of repairs of a

vessel, injured by any of the perils insured against, new materials substituted for the old, do not entitle the insurer to an allowance? and if so, 2d. At what period is the allowance to be admitted?

These questions are open here. They must, in a great measure, depend upon general reasoning, drawn from the nature of the contract of insurance, and that reasoning may be comprised in very narrow limits.

The vessels employed in commercial enterprises, are of various degrees of strength and durability, and more or less adapted to resist the perils of the seas; but the lowest grade in which they are recognised, as subjects of insurance, is when they are barely seaworthy.

The hull, masts, sails and rigging of a vessel may be in a situation to constitute her seaworthy, and yet be much inferior to what they were when they came from the hands of the workmen who constructed them; and a regular gradation may easily be conceived between a vessel perfectly new, well-built, rigged and furnished, and one that is barely seaworthy. When an injury is sustained by a vessel of the latter description, and it becomes necessary to supply her old masts, timbers, sails and rigging with new, it is evident that in all these particulars, she must, in most instances, be placed in a better state by the repairs, than she was before the injury received, the ordinary wear and tear not being within the purview of the policy. Hence, the repairs are carried to a point beyond the mere reinstatement of the vessel, and beyond the indemnity intended.

ALBANY,
February, 1805.

Smith
v.
Bell & others.

*2 D. & E. 407.
413.
411.

In the case of *Da Costa* v. *Newnham*,* determined in the British court of *King's Bench*, since the revolution, the usage which obtained with respect to the repairs of allowing one-third, new for old, seems to have been acknowledged, and it is now urged in argument, that at any rate, whether or not the defendant was entitled to this allowance, was a question for the jury, *as it depended upon usage.*— *Buller*, justice, speaks of it as a usual allowance, and *Ashhurst*, J. observes, that the allowance of one-third of the repairs, *is the rule*, where the ship is repaired and delivered over again to the owner, for his benefit. That case arose, on a technical total loss, which the insured did not avail himself of, by abandoning. The recovery was for an average loss of upwards of eighty *per cent.* The ship had been repaired at the instance of the insurers. They refusing to pay for the repairs, a bottomry bond was executed on the vessel, in consequence of which, she was sold to satisfy the debt.

It was contended that the value of one-third of the repairs ought to be deducted, and the answer to this, which appears to me conclusive, was, that the repairs, having added to the value of the vessel, must have been compensated for, in the sale, on the bottomry bond, and the owners never had the ship, so they could not be the better for the repairs.

From the expressions made use of by the judges, who decided this case, it does not appear that they relied upon the usage of any *particular* trade; but upon the usage of trade generally; and as there is no power on earth, to enact positive regulations for the

wide extended regions of marine enterprises, gene-
ral usage, established from the principles of general
convenience, and sanctioned by the experience and
practice of merchants, is the only source of general
maritime law.

The rule that constitutes the loss of more than
one-half the value of the subject insured, a total
loss, is a positive one, originating in the convenience
of having a determinate and precise test in all cases,
which, by its universality and uniformity, may ren-
der inquiries into minute objects, rather calculated
to perplex than to elucidate, unnecessary.

The precise difference between the value of the
old and new materials, must generally be difficult to
ascertain. That difficulty is much increased, by the
estimate necessarily required of the value of the old,
at the home port, and of the new, at the port of re-
pair. It is, therefore, desirable, to have some in-
variable standard, not calculated, for that is imprac-
ticable, to meet precisely all the variety of cases,
which may occur, so as to render exact justice in
each ; but such a rule as will nearest approximate to
producing that effect, if generally applied. That
effect, if a rule respecting the subject is to obtain, it
was not contended, might not be produced in the pro-
portion alluded to in the case of *Da Costa* v. *Newn-
ham.* From the nature of the contract of insurance,
I think the allowance for replacing the old materials,
with the new, is reasonable and proper ; and, if so,
that, as the deduction is professedly made, on the
principle that the value of the subject insured, has
been enhanced to that amount, that deduction ought
to be made, before the test of technical total loss or

not is applied ; for the doctrine of technical total loss is expressly founded on the position that the subject insured, has been deteriorated more than one-half.

I am, therefore, of opinion, that the judgment of the supreme court be reversed.

Judgment of reversal.